IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HRD CORPORATION d/b/a MARCUS          §
OIL & CHEMICAL,                        §
                                       §
              Plaintiff,               §
                                       §
v.                                     §      CIVIL ACTION NO. H-10-1747
                                       §
DR. EBRAHIM BAGHERZADEH,               §
                                       §
              Defendant.               §

### MEMORANDUM OPINION AND ORDER

Pending before the court are petitioner HRD Corporation's[1] ("HRD") Petition to Vacate Arbitration Award (Docket Entry No. 12) and respondent Dr. Ebrahim Bagherzadeh's Motion to Confirm Arbitration Award and Enter Partial Final Judgment Under Rule 54(b) (Docket Entry No. 25). For the reasons stated below, the court will deny HRD's petition to vacate the award and will grant Bagherzadeh's motion to confirm the award and to enter partial final judgment.

## I.   Factual and Procedural Background

### A.   Underlying Facts

The parties' competing motions stem from an arbitration that arose out of a contractual dispute between HRD and Bagherzadeh. Bagherzadeh is an Iranian chemist who has helped design and develop

---

[1]HRD Corporation conducts business as Marcus Oil & Chemical.

innovative technologies for the petroleum industry.  One of these technologies is called the "OCM Catalyst," which is used to convert methane (natural gas) into ethylene by a process known as "oxidative coupling."[2]  Bagherzadeh's contributions to the OCM Catalyst and related technologies have led to the filing of several patent applications both within and outside the United States.[3]

In 2003 HRD's president and chairman, Abbas Hassan, hired Bagherzadeh to be HRD's director of technology.  HRD provided Bagherzadeh with research facilities and materials and in return acquired ownership rights to the technologies that Bagherzadeh developed.[4]  HRD agreed to pay Bagherzadeh a royalty of 7% of the net proceeds generated through the sale of these technologies.[5]  In July of 2008 Bagherzadeh and HRD entered into a new written agreement (the "2008 Agreement"), pursuant to which HRD was to pay Bagherzadeh $20 million in exchange for exclusive intellectual-property rights to the OCM Catalyst and other related

---

[2]Motion to Confirm Arbitration Award and Enter Partial Final Judgment Under Rule 54(b) ("Motion to Confirm"), Docket Entry No. 25, p. 1; see also Agreement Between Bagherzadeh and HRD, July 21, 2008 ("2008 Agreement"), Exhibit A to [HRD's] Petition to Vacate Arbitration Award ("Petition to Vacate"), Docket Entry No. 12, p. 1.

[3]See 2008 Agreement, Exhibit A to Petition to Vacate, Docket Entry No. 12, p. 1; Motion to Confirm, Docket Entry No. 25, p. 1.

[4]Employment Agreement, July 1, 2003, Exhibit 2 to Motion to Confirm, Docket Entry No. 25, p. 1.

[5]Id.

technologies.[6]   The  agreement  stipulated  that  half  of  the
$20 million would be paid to Bagherzadeh by December 31, 2008, and
the  other  half  on  or  before  July  31,  2009.[7]   HRD  intended  to
generate revenue with these technologies by assigning its rights to
a third party.[8]

The  2008  Agreement  stated  that  "[a]ny  controversy  or  claim
arising  out  of  or  relating  to  [the]  contract,  or  the  breach
thereof,  between  the  [sic]  DR.  BAGHERZADEH  and  the  [sic]  MARCUS
shall  be  settled  by  binding  arbitration."[9]   Less  than  two  months
after executing the 2008 Agreement the parties' business relation-
ship  soured  and  Bagherzadeh  left  the  company.[10]   HRD  did  not  pay
either  installment  of  the  $20  million  that  it  owed  Bagherzadeh
under the terms of the 2008 Agreement.[11]

---

[6]See 2008 Agreement, Exhibit A to Petition to Vacate, Docket Entry No. 12, pp. 1-3.

[7]Id. at 1.

[8]Id.

[9]Id. at 5.

[10]See E-mails between Abbas Hassan and Bagherzadeh, Sept. 3 and Sept. 5, 2008, Exhibit 4 to Motion to Confirm, Docket Entry No. 25, pp. 1-3.   Bagherzadeh claims that he was forced to retire. Id. at 3.   HRD's owners, Abbas and Aziz Hassan, thought that Bagherzadeh's retirement was necessary because his personal obligations were interfering with his job responsibilities.   See id.

[11]Motion to Confirm, Docket Entry No. 25, p. 5.

**B.   The Arbitration**

On April 17, 2009, Bagherzadeh filed a demand for arbitration claiming that HRD breached the 2008 Agreement by failing to compensate him pursuant to the agreement's terms.[12]  In response, asserting that Bagherzadeh had fraudulently induced HRD into the contract by misrepresenting that his research was novel, unique, and patentable, HRD brought a host of counterclaims, including claims for fraud, tortious interference with business relations, slander, breach of contract, and theft.[13]  The parties selected a three-member arbitration panel through the American Arbitration Association ("AAA"), which approved the parties' agreed scheduling order on November 19, 2009.[14]  The scheduling order set out various discovery deadlines and provided that the parties would participate in a five-day arbitration hearing beginning on May 3, 2010 (the "Final Hearing").[15]

The discovery process, however, did not go smoothly.  On February 17, 2010, HRD asked the panel to delay depositions and to continue the Final Hearing, citing Bagherzadeh's delay in producing

---

[12]Demand for Arbitration, Exhibit 5 to Motion to Confirm, Docket Entry No. 25, pp. 1-3.

[13]HRD Corporation[']s Answer to Dr. Bagherzadeh's Statement of Claims, Exhibit 6 to Motion to Confirm, Docket Entry No. 25, p. 1.

[14]Report of Preliminary Hearing and Scheduling Order, Exhibit 8 to Motion to Confirm, Docket Entry No. 25, pp. 1-2.

[15]Id.

-4-

documents, the excessive number of documents that Bagherzadeh had produced, and the unorganized manner in which the documents were compiled.[16] Bagherzadeh also raised several discovery complaints.[17] After the panel conducted a hearing it issued an order modifying the scheduling order but keeping the Final Hearing date intact.[18] On March 16, 2010, HRD again moved for a continuance, arguing that Bagherzadeh had not complied with the modified schedule and that HRD needed additional time to review documents and to travel to Dubai to take the depositions of six Iranian scientists.[19]   The panel denied the motion.[20]

HRD then refused to pay its share of the financial deposit required by the AAA, forcing Bagherzadeh to pay HRD's share if it wanted the arbitration to proceed.[21]   On April 5, 2010, less than a month before the Final Hearing was scheduled, HRD's lead counsel informed Bagherzadeh and the panel that a separate case he was

---

[16]HRD's Motion to Compel Plaintiff to Provide Documents in Usable Fashion, Motion to Delay Depositions and for Continuance of the May Hearing, Exhibit 9 to Motion to Compel, Docket Entry No. 25, pp. 1-3.

[17]Order of Feb. 28, 2010, Exhibit 10 to Motion to Compel, Docket Entry No. 25, pp. 1-3.

[18]Id.

[19]HRD Corporation's Second Motion for Continuance, Exhibit 12 to Motion to Compel, Docket Entry No. 25, pp. 1-3.

[20]Plaintiff's Response to Defendant's Motion to Confirm the Arbitration Award ("HRD's Response"), Docket Entry No. 29, ¶ 41.

[21]E-mail from Trenda Benitez, Mar. 19, 2010, Exhibit 15 to Motion to Confirm, Docket Entry No. 25, p. 1.

litigating in state court had been set for trial on the same day as the Final Hearing — May 3, 2010.[22]  As Bagherzadeh discovered and pointed out to the panel, however, in March of 2010 HRD had asked the state-court judge to set that trial for May 3, 2010, knowing that the date directly conflicted with the Final Hearing.[23]  The panel initially adhered to the amended scheduling order,[24] but after reviewing HRD's fourth motion for continuance, the panel granted a six-week continuance, setting the Final Hearing for June 21, 2010.[25]

HRD's lead counsel subsequently e-mailed the panel and requested that the Final Hearing be rescheduled for July of 2010 to accommodate a European vacation he had planned from June 15 to June 25, 2010.[26]  The panel acquiesced, rescheduling the Final Hearing for June 28, 2010, and issuing an amended discovery schedule.[27]  One day later, on May 13, 2010, HRD gave notice that it planned to depose several Iranian scientists in Dubai at the end

---

[22]Letter from William Ferebee, Apr. 5, 2010, Exhibit 18 to Motion to Confirm, Docket Entry No. 25, p. 1.

[23]Letter from William Ferebee, Mar. 11, 2010, Exhibit 19 to Motion to Confirm, Docket Entry No. 25, p. 1; Letter from Murray Fogler, Apr. 8, 2010, Exhibit 20 to id., p. 1.

[24]E-mail from Trenda Benitez, Apr. 23, 2010, Exhibit 21 to Motion to Confirm, Docket Entry No. 25, p. 1.

[25]E-mail from Trenda Benitez, Apr. 29, 2010, Exhibit 22 to Motion to Confirm, Docket Entry No. 25, p. 1.

[26]E-mail from Cindy Medchill, Apr. 30, 2010, Exhibit 25 to Motion to Confirm, Docket Entry No. 25, p. 1.

[27]E-mail from Trenda Benitez, May 12, 2010, Exhibit 26 to Motion to Confirm, Docket Entry No. 25, p. 1.

of May.[28]   On May 14, 2010, HRD filed its fifth motion for continuance on grounds that the date for the Final Hearing was too close to the date that HRD's lead counsel returned from vacation, and that it needed more time to review documents and to obtain expert reports.[29]   On May 24, 2010, the panel issued an order denying HRD's motion and also denying HRD's depositions.[30]   The order provided, however, that "affidavits may be submitted by either party to the panel by any proposed witness; the panel will give whatever weight it considers appropriate to each affidavit."[31]

On May 14, 2010, HRD filed a complaint in this court seeking a declaratory judgment invalidating two of the patents that were part of the consideration for HRD's promise to pay Bagherzadeh $20 million.[32]   HRD also filed a motion for an injunction or mandamus in a Texas state court seeking a continuance of the Final Hearing based on the same arguments it had presented to the panel.[33]

---

[28]Notices of Deposition, Exhibits 24 and 25 to HRD's Response, Docket Entry No. 29, p. 1.

[29]HRD Corporation's Fifth Motion for Continuance, Exhibit 27 to Motion to Confirm, Docket Entry No. 25, pp. 1-2.

[30]Order of the Panel, May 24, 2010, Exhibit 28 to Motion to Confirm, Docket Entry No. 25, pp. 1-2.

[31]Id.

[32]Plaintiff's Original Complaint, Docket Entry No. 1, ¶¶ 1, 20-24.

[33]Order on Original Petition & Motion for Injunction or Mandamus, Exhibit 39 to Motion to Confirm, Docket Entry No. 25, p. 1.

The district court denied the motion. HRD's appeal of the district court's order was also denied.[34]

The parties participated in a three-day Final Hearing beginning on June 28, 2010.[35] Both HRD and Bagherzadeh called witnesses, cross-examined each other's witnesses, presented experts, and made legal arguments.[36] At the end of the Final Hearing HRD told the panel that it did not "have any additional exhibits or witnesses" to present.[37] After the Final Hearing adjourned the panel permitted the parties to submit evidentiary briefs highlighting evidence that they wanted the panel "to particularly examine and take into consideration."[38] The panel finally declared that the Final Hearing was "closed" on July 15, 2010, after both "parties advised that they had no other evidence that [they] desired to offer."[39]

Based on the evidence submitted by the parties the panel awarded Bagherzadeh $20 million in damages for his breach-of-contract claim and $700,000 in attorneys' fees, denied HRD's

---

[34]Memorandum Opinion, Exhibit 40 to Motion to Confirm, Docket Entry No. 25, p. 1.

[35]See Motion to Confirm, Docket Entry No. 25, p. 8.

[36]See Trs. of Arbitration, June 28, 2010 to June 30, 2010, Exhibits 41-43 of Motion to Confirm, Docket Entry No. 25.

[37]Tr. of Arbitration, June 30, 2010, Exhibit 43 to Motion to Confirm, Docket Entry No. 25, p. 58 lines 8-10.

[38]Id. at 59 line 18 - 60 line 14.

[39]Final Award, Exhibit B to Petition to Vacate, Docket Entry No. 12, p. 1.

counterclaims, and assessed all administrative fees and costs against HRD.[40]

## C.   Procedural History

On August 16, 2010, HRD petitioned to vacate the arbitration award (Docket Entry No. 12), arguing that vacatur is warranted because the arbitrators were guilty of misconduct in violation of 9 U.S.C. § 10(a) of the Federal Arbitration Act ("FAA").   On October 12, 2010, Bagherzadeh moved to confirm the award (Docket Entry No. 25), arguing that there is "no legitimate basis" for vacatur.[41]   Bagherzadeh also requests that the court enter a partial final judgment incorporating the award under Federal Rule 54(b).[42]

## II.   Standard of Review

Section 9 of the FAA requires the court to confirm the panel's arbitration award unless there is a basis for vacating the award. 9 U.S.C. § 9 (2006); see Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582, 128 S. Ct. 1396 (2008).   HRD bears the burden of proving that vacatur is warranted.   See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak, 364 F.3d 274, 288 (5th Cir. 2004) ("The party defending against enforcement of the arbitral award bears the burden of proof.").   Vacatur of an arbitration award is a "draconian remedy," Positive Software Solutions v. New

---

[40]Id. at 1-2.

[41]Motion to Confirm, Docket Entry No. 25, p. 11.

[42]Id. at 25.

Century Mortg. Corp., 476 F.3d 278, 286 (5th Cir. 2007), available only under limited statutory exceptions, Hall Street, 128 S. Ct. at 584.

Section 10 of the FAA provides the four exclusive bases for vacatur:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).  "To assure that arbitration serves as an efficient and cost-effective alternative to litigation, and to hold parties to their agreements to arbitrate, judicial review of an arbitrator's award is exceedingly narrow."  Sungard Energy Sys. Inc. v. Gas Transmission Nw. Corp., 551 F. Supp. 2d 608, 612 (S.D. Tex. 2008) (quoting Positive Software Solutions, 476 F.3d at 280). The court resolves all doubts in favor of arbitration.  Executone Info. Sys., Inc. v. Davis, 26 F.3d 1314, 1320 (5th Cir. 1994).

### III.  Analysis

HRD advances four grounds under Section 10(a)(3) and (4) in support of its petition to vacate the arbitration award.  HRD first

-10-

argues that the arbitrators were guilty of misconduct because they refused to postpone the hearing even though sufficient cause was shown.[43]   Second, HRD argues that the arbitrators refused to hear evidence pertinent and material to the controversy.[44]   Third, HRD contends that the arbitrators' discovery orders prejudiced its ability to present its case.[45]   Finally, HRD argues that the panel exceeded its powers when it awarded Bagherzadeh damages for breach of contract because in making its determination the panel impliedly determined that the patents were valid, an issue that HRD contends can only be decided by a federal court.[46]   Each argument will be addressed in turn.[47]

---

[43]Petition to Vacate, Docket Entry No. 12, p. 3.

[44]Id. at 4.

[45]Id. at 6.

[46]Id. at 8.

[47]The court is unpersuaded by HRD's argument that because no discovery has been conducted since the Scheduling Conference, Bagherzadeh's Motion to Confirm is untimely.   See HRD's Response, Docket Entry No. 29, ¶ 9.   HRD takes out of context the court's statement at the Scheduling Conference that "[a]t an appropriate time after discovery it might be a proper issue for a summary judgment."   Tr. of Hearing from Aug. 27, 2010, Docket Entry No. 26, p. 6 lines 5-7.   The "issue" the court was discussing, as reflected in the transcript of the Conference, was whether HRD's complaint was sufficiently specific under the standards set out by Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and not whether the panel's award should be confirmed.   On October 12, 2010, after the Scheduling Conference, Bagherzadeh filed its Motion to Confirm, which is entitled to "streamlined treatment[.]"   Hall Street, 128 S. Ct. at 1402.

**A.   The Panel's Refusal to Postpone the Hearing**

On May 14, 2010, HRD moved to continue the Final Hearing from its rescheduled date of June 28, 2010.[48]   HRD argued that it had shown sufficient cause for postponement because (1) a vacation letter from HRD's counsel was on file for the week of June 28, 2010, (2) HRD's counsel was returning from a European vacation on June 25, 2010, (3) the arbitration could not proceed before the patent-validity issue was resolved in federal court, and (4) HRD had not had time to review all of the documents produced during discovery or to obtain complete expert reports.[49]   HRD now argues that the panel engaged in misconduct when it denied its motion.

Under the FAA an arbitration award may be vacated if the arbitrators were guilty of misconduct in refusing to postpone the arbitration hearing "upon sufficient cause shown[.]"   9 U.S.C. § 10(a)(3).   To succeed in vacating the award under this provision, HRD must establish that there was no reasonable basis for the panel's refusal to postpone the hearing and that HRD suffered prejudice because of that refusal.   <u>Laws v. Morgan Stanley Dean Witter</u>, 452 F.3d 398, 400 (5th Cir. 2006).

HRD has not shown that it suffered prejudice from the panel's denial of its motion for continuance.   For example, HRD has not

---

[48]HRD Corporation's Fifth Motion for Continuance, Exhibit 27 to Motion to Confirm, Docket Entry No. 25.

[49]<u>Id.</u> at 1-2.

explained how it would have presented its case differently or why the outcome would have changed if it had been allowed more time to prepare for the hearing. According to HRD, it was prejudiced because the panel's denial effectively stripped HRD of "its right to its choice of counsel" in violation of constitutional law.[50] This argument is unavailing, however, in light of the evidence in the record. The panel's denial of the continuance did not prohibit Mr. Ferebee, HRD's lead counsel, from participating in the Final Hearing; in fact, the date of the Final Hearing was moved (for the second time) to accommodate Ferebee's vacation schedule.[51] Moreover, HRD was represented by counsel during all phases of the arbitration, including the Final Hearing, and Ferebee was present during the Final Hearing and assisted in the presentation of HRD's case. There is no evidence that the attorneys who represented HRD during the Final Hearing were inadequate or that the case would have been tried differently if Ferebee had played a more prominent role.

Even if HRD would have benefitted from a continuance it cannot show misconduct because the evidence demonstrates a reasonable basis on which the panel could have denied the continuance. First, the panel may have concluded that HRD failed to present good cause

---

[50]HRD's Response, Docket Entry No. 29, ¶¶ 19-23.

[51]See Order of the Panel, May 24, 2010, Exhibit 28 to Motion to Confirm, Docket Entry No. 25, pp. 1-2; E-mail from Cindy Medchill, Apr. 30, 2010, Exhibit 25 to id., p. 1; E-mail from Trenda Benitez, May 12, 2010, Exhibit 26 to id., p. 1.

for further delay.  The Final Hearing, originally scheduled for May 3, 2010,[52] was rescheduled for June 21, 2010, because HRD argued that it needed more time to review discovery documents and prepare expert reports.[53]  When HRD subsequently informed the panel that Ferebee had planned a European vacation between June 15 and June 25, 2010, the panel again rescheduled the Final Hearing for June 28, 2010.[54]  The panel could have reasonably concluded that because all of the parties and their respective attorneys were able to attend a Final Hearing on June 28, 2010, and because it had already continued the proceeding for seven weeks, any further delay would undermine arbitration's virtue of being "a speedy and informal alternative to litigation."[55]  Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex., 915 F.2d 1017, 1022 (5th Cir. 1990).

---

[52]Report of Preliminary Hearing and Scheduling Order, Exhibit 8 to Motion to Confirm, Docket Entry No. 25, p. 2.

[53]See E-mail from Trenda Benitez, Apr. 29, 2010, Exhibit 22 to Motion to Confirm, Docket Entry No. 25, p. 1.

[54]E-mail from Trenda Benitez, May 12, 2010, Exhibit 26 to Motion to Confirm, Docket Entry No. 25, p. 1.

[55]HRD argues that it was improper for the panel to disregard Ferebee's vacation letter that covered the week of June 28, 2010. HRD's Response, Docket Entry No. 29, ¶ 18.  HRD presents no authority, however, that supports the notion that an arbitration panel must abide by an attorney's vacation letter.  Notwithstanding the absence of authority, the record shows that the panel was not alerted to the existence of Ferebee's vacation letter until April 30, 2010, after it had already granted HRD's motion for continuance and rescheduled the Final Hearing for June 21, 2010. E-mail from Cindy Medchill, Apr. 30, 2010, Exhibit 25 to Motion to Confirm, Docket Entry No. 25, p. 1.  Given this timeline of events, the court concludes that the panel's decision to disregard Ferebee's vacation letter is not evidence of misconduct.

The panel could also have reasonably determined that granting a third continuance would have been inequitable in light of the delay tactics previously exhibited by HRD's counsel.  In March of 2010 HRD failed to pay its share of the deposit required by the AAA, which would have suspended the arbitration proceeding had Bagherzadeh not paid HRD's portion.[56]  In April the panel was confronted with Ferebee's claim that a trial in a separate case had been set for the same day as the Final Hearing, but the panel later learned that Ferebee had specifically requested that the other trial take place on that date.[57]

HRD has not shown that it was prejudiced by the panel's decision to deny the motion for continuance.  Moreover, under the facts described above the panel had a reasonable basis for determining that a third continuance was not warranted and that Bagherzadeh's arbitration claim did not deserve further delay.

## B.   The Panel's Restrictions on Depositions

HRD argues that the panel refused to "hear evidence pertinent and material to the controversy" when on May 24, 2010, it issued an order stating that "[d]epositions noticed to date are denied."[58]

---

[56]See E-mail from Trenda Benitez, Mar. 19, 2010, Exhibit 15 to Motion to Confirm, Docket Entry No. 25, p. 1. Order Suspending Hearing, Exhibit 16 to id., p. 1.

[57]Letter from William Ferebee, Apr. 5, 2010, Exhibit 18 to Motion to Confirm, Docket Entry No. 25, p. 1; Letter from William Ferebee, Mar. 11, 2010, Exhibit 19 to Motion to Confirm, Docket Entry No. 25, p. 1.

[58]Petition to Vacate, Docket Entry No. 12, p. 4.

While arbitrators "must give each of the parties an adequate opportunity to present its evidence and arguments," Forsythe Int'l, S.A., 915 F.2d at 1023, parties to arbitration should expect arbitrators to take certain "procedural and evidentiary shortcuts that would properly frustrate counsel in a formal trial" and "to act affirmatively to simplify and expedite the proceedings[,]" Prestige Ford v. Ford Dealer Computer Servs., Inc., 324 F.3d 391, 394 (5th Cir. 2003), overruled on other grounds, Hall Street, 128 S. Ct. 1396 (2008). Arbitration is intended to resolve disputes quickly and more informally than litigation. "Parties to voluntary arbitration may not superimpose rigorous procedural limitations on the very process designed to avoid such limitations." Id. Thus, an arbitrator's exclusion of evidence will warrant vacatur of the award only "if the exclusion of relevant evidence deprive[d] a party of a fair hearing." Karaha Bodas Co., 364 F.3d at 301.

On May 13, 2010, HRD gave notice to Bagherzadeh and the panel that it planned to depose two Iranian scientists in Dubai on May 30 and May 31, 2010.[59] HRD contends that the panel refused to hear pertinent and material evidence when it denied HRD's request to conduct these depositions. HRD has not shown, however, that the panel's decision denied HRD a fair hearing. Even though the panel denied the Dubai depositions, it stated in the same paragraph that

---

[59]Notices of Deposition, Exhibit 24 to HRD's Response, Docket Entry No. 29, p. 1.

"affidavits may be submitted by either party to the panel by any proposed witness" and that "the panel [would] give whatever weight it consider[ed] appropriate to each affidavit."[60]  Accordingly, the panel's order, contrary to HRD's contentions, provided an alternative avenue by which HRD could have admitted the scientists' testimony.

The depositions denied by the panel were noticed on May 13, 2010, less than four weeks before the parties were required to submit their pre-hearing briefs to the panel.[61]  Nothing prevented HRD from scheduling the depositions earlier in the discovery process.  As early as October 27, 2009, HRD took the position that Bagherzadeh had made fraudulent representations that his technologies were unique and patentable when in fact he "was using technology that had previously been invented by others."[62]  In its second motion for continuance, filed on March 16, 2010, HRD stated that it anticipated taking depositions of several of the Iranian scientists who had previously worked with Bagherzadeh.[63]  Yet HRD did not take any steps to arrange the depositions until the notices

---

[60]Order of the Panel, May 24, 2010, Exhibit 28 to Motion to Confirm, Docket Entry No. 25, pp. 1-2.

[61]See E-mail from Trenda Benitez, May 12, 2010, Exhibit 26 to Motion to Confirm, Docket Entry No. 25, p. 1; Notices of Deposition, Exhibit 24 to HRD's Response, Docket Entry No. 29, p. 1.

[62]HRD Corporation[']s Answer to Dr. Bagherzadeh's Statement of Claims, Exhibit 6 to Motion to Confirm, Docket Entry No. 25, p. 2.

[63]HRD Corporation's Second Motion for Continuance, Exhibit 12 to Motion to Confirm, Docket Entry No. 25, p. 7.

it filed on May 13, 2010.  Even then, HRD provided no evidence that any of the scientists had agreed to meet in Dubai for depositions. The panel reasonably could have decided that given HRD's previous attempts to delay the Final Hearing and its lack of diligence in arranging the depositions, allowing the depositions would have invited further delay.  See Laws, 452 F.3d at 400.

Because the panel's decision did not exclude the evidence that HRD sought to introduce, and because the panel reasonably could have perceived HRD's late request for depositions as yet another delaying tactic, the court concludes that the panel's decision to deny the deposition request did not prevent HRD from presenting evidence at the Final Hearing.

## C.   The Panel's Discovery Rulings Generally

HRD argues that the panel issued discovery rulings that were consistently favorable to Bagherzadeh and onerous to HRD, thus prejudicing HRD's ability to present its case.[64]  HRD argues that these rulings, viewed as a whole, "call[] the neutrality of the Panel into serious question."[65]

A court may order vacatur of an arbitration award "where there was evident partiality or corruption in the arbitrators[.]" 9 U.S.C. § 10(a)(2).  Courts should refrain from vacating an award under this statutory basis "unless bias was clearly evident in the

---

[64]Petition to Vacate, Docket Entry No. 12, p. 6.

[65]Id. at 7.

decisionmakers." <u>Positive Software Solutions</u>, 476 F.3d at 281.
Vacatur may also be warranted if the arbitrators exhibited any
"misbehavior by which the rights of the parties have been
prejudiced."  9 U.S.C. § 10(a)(3).   To protect the primary
objectives of arbitration, however, arbitrators are entitled to
wide latitude when it comes to discovery issues and "should be
expected to act affirmatively to simplify and expedite the
proceedings[.]"  <u>Forsythe Int'l, S.A.</u>, 915 F.2d at 1022.

The record does not support HRD's contentions that the panel's
discovery rulings were a product of any bias favoring one party
over the other or that the rulings prejudiced HRD's ability to
present its case.   Viewed collectively, the panel's decisions
merely reflect its desire to resolve the dispute in an expeditious
manner.   In fact, the record shows that in several instances the
panel modified the scheduling order to accommodate HRD's requests
and to ensure that discovery disputes did not impinge on HRD's
ability to gather the materials it needed to present its case.

On November 19, 2009, the panel approved an initial scheduling
order to which both parties agreed.[66]   In February of 2010, after
HRD raised various discovery disputes, the panel entered a modified
scheduling order that required both Bagherzadeh and HRD to produce
various documents and crystallized deposition dates.[67]   Aware that

---

[66]Report of Preliminary Hearing and Scheduling Order, Exhibit 8
to Motion to Confirm, Docket Entry No. 25, pp. 1-3.

[67]Order of the Panel, Feb. 28, 2010, Exhibit 10 to Motion to
Confirm, Docket Entry No. 25, pp. 1-2.

the scheduled date for the Final Hearing was no longer attainable because of the ongoing discovery process, the panel granted HRD's request for a continuance.[68]  The panel moved the Final Hearing back six weeks to June 21, 2010, and then back an additional week to June 28 when it learned about Ferebee's vacation plans.[69]  The panel granted these continuances despite its awareness that HRD had attempted to delay the May 3, 2010, Final Hearing by intentionally scheduling another trial on the same day.

HRD argues that the panel's ruling requiring expert reports to be filed by April 26, 2010, was unfair because the ruling was issued three days before the deadline and because the panel knew that HRD had not finished deposing Bagherzadeh.[70]  But the record shows that such a ruling was reasonable under the circumstances. Since at the time of the ruling the Final Hearing was still set for May 3, 2010, it was reasonable for the panel to ensure that the parties were disclosing pertinent information in a timely manner. The panel also could have reasonably decided that HRD had lacked diligence in preparing its expert reports.  HRD argues that it could not have produced the reports earlier because it had not yet taken Bagherzadeh's deposition, but HRD had already completed half of Bagherzadeh's deposition on March 22, 2010, and had designated

---

[68]E-mail from Trenda Benitez, Apr. 29, 2010, Exhibit 22 to Motion to Confirm, Docket Entry No. 25, p. 1.

[69]E-mail from Trenda Benitez, May 12, 2010, Exhibit 26 to Motion to Confirm, Docket Entry No. 25, p. 1.

[70]HRD's Response, Docket Entry No. 29, ¶¶ 49-61.

all of its experts by April 12, 2010.[71] Furthermore, when the panel postponed the Final Hearing until June 28, 2010, it allowed the parties to file expert reports by May 21, 2010,[72] and later extended that date to May 26, 2010.[73]

Even if the court were to conclude that the panel's rulings were unreasonable, HRD has not demonstrated that its "rights were prejudiced[.]"  See 9 U.S.C. § 10(a)(3).  The date for the Final Hearing was postponed seven weeks, which gave the parties adequate time to prepare.  HRD was permitted to present expert witnesses at the Final Hearing,[74] and at the end of the Final Hearing HRD told the panel that it did not "have any additional exhibits or witnesses" to present.[75]  The panel did not formally close the Final

---

[71]Id. at ¶¶ 48, 50-51.

[72]E-mail from Trenda Benitez, May 12, 2010, Exhibit 26 to Motion to Confirm, Docket Entry No. 25, p. 1.

[73]Order of the Panel, May 24, 2010, Exhibit 28 to Motion to Confirm, Docket Entry No. 25, p. 2.

[74]See Tr. of Arbitration, June 28, 2010, Exhibit 41 of Motion to Confirm, Docket Entry No. 25, p. 12 lines 10-18.  HRD argues that the panel engaged in misconduct by not allowing testimony from an economic-damages expert, but the court concludes that the panel acted reasonably when it set the discovery deadlines, and that even if it acted unreasonably, HRD was not prejudiced in proceeding without the expert because the panel's decision to deny HRD's counterclaims on the merits obviated the need for an expert to testify about HRD's economic damages.

[75]Tr. of Arbitration, June 30, 2010, Exhibit 43 to Motion to Confirm, Docket Entry No. 25, p. 58:8-10.

Hearing until July 15, 2010, after both "parties advised that they had no other evidence that [they] desired to offer."[76]

In light of these facts and the latitude to which arbitrators are entitled when it comes to discovery issues, the court concludes that the panel's discovery rulings fairly and expeditiously advanced the dispute towards resolution, and did not reflect a bias for one side over the other, result in prejudice for either party, or operate to deny HRD a fair hearing.

### D.   The Panel's Authority to Award Bagherzadeh With Respect to His Claim for Breach of Contract

Finally, HRD argues that the panel exceeded its powers when it awarded Bagherzadeh damages for breach of contract.[77]   Since "'[a]rbitration is a matter of contract,'" the arbitrators' powers are "'dependent on the [contractual] provisions under which the arbitrators were appointed.'"   Apache Bohai Corp. LDC v. Texaco China BV, 480 F.3d 397, 401 (5th Cir. 2007) (quoting Brook v. Peak Int'l, 294 F.3d 668, 672 (5th Cir. 2002)).   Arbitrators exceed their powers when they act "contrary to express contractual provisions."   Apache Bohai Corp. LDC, 480 F.3d at 402 (internal quotations omitted).   The court must affirm the arbitrator's decision if it is rationally inferable from the underlying agreement.   Executone Info. Sys., 26 F.3d at 1320.

---

[76]Final Award, Exhibit B to Petition to Vacate, Docket Entry No. 12, p. 1.

[77]Id. at 8.

-22-

The 2008 Agreement contained the following arbitration clause:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, between the [sic] DR. BAGHERZADEH and the [sic] MARCUS shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association in a convenient location in the State of Texas (State). The judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.[78]

Invoking this expansive clause, Bagherzadeh filed a demand for arbitration, claiming that HRD breached the 2008 Agreement by failing to pay Bagherzadeh $20 million as consideration for the release of his intellectual property rights.[79] After considering the parties' opening statements, evidence, and closing arguments, the panel awarded Bagherzadeh recovery on his breach-of-contract claim and denied HRD's counterclaims.[80] The panel issued a Final Award that succinctly addressed the issues submitted by the parties and acted within its authority as circumscribed by the 2008 Agreement.

HRD argues that the panel exceeded its authority because its award favoring Bagherzadeh was predicated on an implied determination that certain patents are valid, which is an issue that HRD contends is within the exclusive jurisdiction of federal

---

[78]2008 Agreement, Exhibit 3 to Motion to Confirm, Docket Entry No. 25, p. 5.

[79]Demand for Arbitration, Exhibit 5 to Motion to Confirm, Docket Entry No. 25, p. 1.

[80]Final Award, Exhibit 1 to Motion to Confirm, Docket Entry No. 25, pp. 1-2.

-23-

courts.  HRD's assertion is unfounded.  As HRD acknowledges, the award does not mention patents or intellectual property.[81] Furthermore, there is nothing in the 2008 Agreement that conditions a breach-of-contract claim on a determination that the patents at issue are valid.  The contract provided that HRD could terminate the 2008 Agreement by giving three months' notice "if a court of law determine[d] all of the issued patents to be invalid."[82]  This language did not impose a requirement on the arbitrators to delay Bagherzadeh's breach-of-contract claim until the patent-validity issue was resolved.

**E.    Conclusion and Partial Final Judgment Under Rule 54(b)**

To preserve arbitration "[a]s a speedy and informal alternative to litigation," Forsythe Int'l, S.A., 915 F.2d at 1022, courts are only permitted to vacate arbitration awards in accordance with one of the statutory bases listed in Section 10(a) of the FAA.  The court concludes that the panel did not engage in misconduct when it refused to postpone the Final Hearing for a third time because its decision was reasonable and because the refusal did not prejudice HRD.  The court concludes that the panel did not engage in misconduct in denying HRD's depositions and in issuing its discovery rulings because the rulings did not deny HRD a fair hearing.  The court also concludes that the arbitration

---

[81]See id. at 1-3.

[82]HRD does not contend that it gave three months' notice of termination.

clause in the 2008 Agreement granted the panel the authority to award damages to Bagherzadeh for his breach-of-contract claim.

Federal Rule of Civil Procedure 54(b) provides that "[w]hen an action presents more than one claim for relief[,] . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." In this action, the claims concerning the confirmation or vacatur of the arbitration award are distinct from HRD's patent-validity claims. The court is also mindful that applications for an order confirming an arbitration award deserve "streamlined treatment." Hall Street, 128 S. Ct. at 1402. The court therefore concludes that there is no just reason for delaying final judgment with respect to the court's Order confirming the arbitration award.

## IV. Order

For the reasons explained above, the court concludes that HRD Corporation's Petition to Vacate Arbitration Award (Docket Entry No. 12) is **DENIED** and that Dr. Ebrahim Bagherzadeh's Motion to Confirm Arbitration Award and Enter Partial Final Judgment Under Rule 54(b) (Docket Entry No. 25) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 24th day of March, 2011.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE